**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**NIGHT BOX**
**FILED**

MAR 19 2004

Case No. 03-22112-HUCK-TURNOFF

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

BANK ESPIRITO SANTO
INTERNATIONAL, LTD.,
a Cayman Islands corporation,

**NOTICED FOR HEARING BEFORE**
**JUDGE STETTIN, PURSUANT TO**
**THE COURT'S OCTOBER 22, 2003 ORDER**

Plaintiff,

vs.

E.S. BANKEST L.C., et al.,

Defendants.

_____/

### PLAINTIFF'S RESPONSE TO PARLAPIANO'S MOTION
### FOR PROTECTIVE ORDER STAYING DISCOVERY

Plaintiff Bank Espirito Santo International, Ltd. ("BESIL"), by and through its counsel,

opposes the request of defendant Dominick Parlapiano ("Parlapiano") for a stay of this action

pending completion of the criminal prosecution against Parlapiano.

**A.      The Court Has Already Decided This Issue And Denied A Stay.**

This Court has already considered ***and denied*** a similar request to stay this action.  On

October 14, 2003, defendant E.S. Bankest, L.C. similarly sought to stay discovery on the basis of

its motion to dismiss (which, like Parlapiano's motion, alleged lack of diversity).  The Court

denied that motion in an Order dated October 22, 2003, instead allowing expedited discovery on

jurisdictional issues and expressly ***not*** precluding merits discovery.  *See* Exhibit A hereto;

Transcript of October 22, 2003 hearing at pp. 4-6 ("If it turns out that there is more merits than

jurisdictional[,] it seems to me it is no harm no foul.  Eventually merits depositions will be

completed, whether in this court or in state court. . . . It was not meant to preclude merits

discovery.").



we deliver creative and effective business solutions and counsel
**BERGER SINGERMAN**
attorneys at law

*Fort Lauderdale   Miami   Tallahassee*

In fact, the Court further clarified that this proceeding was not stayed or abated through a subsequent Order dated January 8, 2004 ("As agreed by the parties, anything in the Omnibus Order dated on October 22, 2003 that indicated that the proceedings were stayed or abated is hereby vacated."). Notably, the January 8, 2004 Order – the relevant portion of which was pursuant to the agreement of the parties – was issued more than a month after Parlapiano had been indicted by the government; as such, even in the face of the indictment and despite pending motions to dismiss, this Court has already affirmed that there should be no stay or abatement of any portion of this case.

Moreover, at the most recent status conference in this action, the Court clearly conveyed its intention to try this case by November of this year. (Indeed, upon BESIL's suggestion that it was ready and willing to try this case tomorrow, the Court volunteered to impanel a jury the next business day.) As Parlapiano's counsel has not attended the status conferences before the Court, Parlapiano and his counsel may not be aware of the Court's intention to try this case expeditiously.

**B.     Parlapiano's Invocation of His Fifth Amendment Rights Does Not Meet The Stringent Requirements of the Eleventh Circuit For Staying An Action Pending Resolution of a Parallel Criminal Proceeding.**

Parlapiano argues that the entirety of this case, including overdue and pending discovery requests issued by BESIL to Parlapiano,[1] should be stayed due to the pending criminal matter and Parlapiano's invocation of the Fifth Amendment in this action. Notably, Parlapiano fails to cite any caselaw from the Eleventh Circuit in support of his request for a stay. The reason is obvious: the Eleventh Circuit has established a stringent standard for staying a civil case pending a criminal prosecution, and Parlapiano cannot meet the applicable standard.

---

[1]     Parlapiano's responses to document requests and certain subpoenas were due February 25, 2004; Parlapiano made no response at all. BESIL is filing a motion to compel simultaneously with the filing of this responsive memorandum.

we deliver creative and effective business solutions and counsel
250832.2 B E R G E R   S I N G E R M A N     *Fort Lauderdale   Miami   Tallahassee*
attorneys at law
2

Under Eleventh Circuit law, "a court must stay a civil proceeding pending resolution of a related criminal prosecution *only* when 'special circumstances' so require in the 'interests of justice. The court may deny a stay so long as the privilege's invocation does not compel an adverse judgment against the claimant." *United States v. Lot*, 23 F.3d 359, 364 (11th Cir. 1994) (emphasis added); *see also In re Financial Federated Title & Trust, Inc.*, 252 B.R. 834, 837 (Bankr. S.D. Fla. 2000) ("Rather, the law in the Eleventh Circuit requires a consideration of whether, as a result of invoking the privilege, the defendant faces certain loss of the civil proceeding on summary judgment if the civil proceeding were to continue.") (citing *United States v. Lot, supra,*, and *Pervis v. State Farm Fire & Casualty Co.*, 901 F.2d 944 (11th Cir. 1990)).

Parlapiano tries to fit his situation into this narrow "special circumstances" exception by noting that he has already invoked his Fifth Amendment privilege in this action. However, the mere fact that Parlapiano has invoked the Fifth Amendment in response to deposition questions (and presumably will seek to avoid responding to future discovery requests on the same basis) does not meet the stringent test of the Eleventh Circuit to justify a stay. Rather, under Eleventh Circuit caselaw, the defendant seeking the stay must show that invocation of the Fifth Amendment privilege results in "certain loss" by an "actual adverse judgment, and not merely the loss of the defendant's most effective defense." *In re Financial Federated Title & Trust, Inc.*, 252 B.R. at 838 (citing *United States v. Two Parcels of Real Property*, 92 F.3d 1123 (11th Cir. 1996) and *SEC v. Incendy*, 936 F.Supp. 952 (S.D. Fla. 1996)). As numerous courts have stated, "the mere possibility of disadvantage in a civil proceeding, such as which might result from this adverse inference, is insufficient to justify a stay in the instant case. Indeed, even severe disadvantage rising to the level of [defendant] losing her best defense would not meet the

test in this Circuit." *In re Financial Federated Title & Trust, Inc.*, 252 B.R. at 838 (citing *SEC v. Rehtorik*, 755 F. Supp. 1018 (S.D. Fla. 1990) and *SEC v. Incendy*, 936 F.Supp. 952 (S.D. Fla. 1996)); *Shell Oil Co. v. Altina Assocs., Inc.*, 866 F. Supp. 536, 540 (M.D. Fla. 1994) ("Forcing an individual to risk non-criminal disadvantage by remaining silent for fear of self incrimination in a parallel criminal proceeding does not rise to the level of an unconstitutional infringement."); *SEC v. Incendy*, 936 F. Supp. at 957 ("Defendant's attempt to stay the proceedings at this early stage is akin to a 'blanket assertion' of his Fifth Amendment privilege. Generally, a blanket refusal to produce records or testify is insufficient to support a Fifth Amendment claim."); *United States v. Lot*, 23 F.3d at 364 (affirming the district court's denial of a stay because the defendant could not demonstrate that her invocation of the privilege resulted in the certain loss of the civil forfeiture proceeding).

As such, neither the pending criminal matter nor Parlapiano's assertion of the Fifth Amendment provide a basis for staying this proceeding.

**C.    Parlapiano's Motion to Dismiss Does Not Provide A Basis For Staying This Action**

The only other basis Parlapiano offers for his requested stay is his self-serving assertion that his pending *Motion to Dismiss* offers "good grounds" and is dispositive of all issues in this case. However, the purportedly "good grounds" asserted by Parlapiano are, upon closer examination, deficient and afford no basis for a stay. First, Parlapiano contends that the Court lacks subject matter jurisdiction due to a lack of total diversity. (Motion at 3) Not only has the Court already determined that it has subject matter jurisdiction over this action (*see* December 23, 2003 Order, Exhibit B hereto), but the only new issue raised by Parlapiano – the addition of a non-diverse defendant, R. Peter Stanham – has been rendered moot by the fact that BESIL voluntarily dismissed Stanham on March 9, 2004. As such, this Court has jurisdiction, and a stay is not warranted.

we deliver creative and effective business solutions and counsel
BERGER SINGERMAN     Fort Lauderdale   Miami   Tallahassee
attorneys at law

Second, Parlapiano contends that BESIL has failed to state a claim against him and is otherwise precluded from pursuing a cause of action against him as a result of certain aspects of the Restructuring Agreement.  BESIL will address in detail the legal deficiencies and factual disputes related to these issues in BESIL's consolidated response to the various defendants' motions to dismiss (due on April 5, 2004).  However, for the purposes of denying this motion to stay, it is sufficient to recognize that this Court has already found that BESIL *does* state a cause of action against Parlapiano for constructive trust (*see* Order dated December 24, 2003, "BESIL's Count V adequately states a claim for the imposition of a constructive trust over the assets of the Principals [defined to include Parlapiano] . . .", Exhibit C hereto).  As such, at least one cause of action asserted against Parlapiano has already been determined to state a claim, and therefore his *Motion to Dismiss* is contrary to the law of this case and provides no basis for staying any portion of this case.

Finally, BESIL submits that the true purpose of Parlapiano's pending motion to stay this action is simply an attempt by Parlapiano to evade his obligations to respond to BESIL's discovery requests.  This is apparent from the chronology of the matter:  Parlapiano first invoked his Fifth Amendment rights in this action almost five months ago, on October 22, 2003; the criminal matter has been pending against Parlapiano for more than three months, since December 4, 2003; Parlapiano waited until March 4, 2003 – eight days *after* his first set of discovery responses were due – to request a stay.[2]  Parlapiano's desire to avoid participation in written discovery is not a legitimate basis to stay this action, and BESIL is filing concurrently herewith a motion to compel discovery responses from Parlapiano.

---

[2]     Parlapiano filed this motion on March 4, 2003.  His responses to requests for production of documents were due on February 25, 2003.  His responses to the remaining discovery requests are due March 22, 2003.

250832.2     we deliver creative and effective business solutions and counsel
BERGER  SINGERMAN     Fort Lauderdale   Miami   Tallahassee
attorneys at law

WHEREFORE, BESIL respectfully requests that the Court deny Parlapiano's motion to stay in its entirety, and for such other relief as the Court deems appropriate.

Respectfully submitted,

BERGER SINGERMAN
Attorneys for Plaintiff
Bank Espirito Santo International, Ltd.
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Telephone:    (954) 525-9900
Facsimile:    (954) 523-2872

By: _____
    Mitchell W. Berger, Florida Bar No. 311340
    Rene D. Harrod, Florida Bar No. 627666
    Las Olas Centre II, 10th Floor
    350 East Las Olas Boulevard
    Fort Lauderdale, Florida 33301
    Telephone: (954) 525-9900
    Facsimile: (954) 523-2872

we deliver creative and effective business solutions and counsel
250872.2  BERGER  SINGERMAN
attorneys at law            Fort  Lauderdale   Miami   Tallahassee
6

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via U.S. Mail and Fax to the parties on the Service List attached hereto this ⌐⌐ day of March, 2004.

Respectfully submitted,

BERGER SINGERMAN
Attorneys for Plaintiff
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
(954) 525-9900
Fax: (954) 523-2872

By:_____
Mitchell W. Berger, Florida Bar No. 311340
Charles H. Lichtman, Florida Bar No. 501050
Rene D. Harrod, Florida Bar No. 627666

**BANK ESPIRITO SANTO INTERNATIONAL, LTD v. E.S. BANKEST L.C., et al**
**U.S. DISTRICT COURT, S. D. FLORIDA (Miami Division)**
**Case No. 03-22112-CIV-HUCK/TURNOFF**

E.S. Bankest, L.C.
c/o Registered Agent
Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301
*As registered agent of E.S. Bankest L.C.*

ES Bankest
c/o Eduardo Orlansky, Manager
881 Ocean Drive, Apt. 12A
Key Biscayne, FL 33149
*As Manager for E.S. Bankest L.C.*

Edward R. Shohat, Esq.
Bierman Shohat Loewy & Klein
800 Brickell Ave., Penthouse 2
Miami, FL 33131
Tel: 305-358-7000 / Fax: 305-358-4010
*Counsel for Hector Orlansky*
*  and Eduardo Orlansky*

Tina M. Talarchyk, Esq.
Duane Morris, LLP
200 S Biscayne Blvd Ste 3400
Miami Florida 33131-5323
Tel: 305-960-2200 / Fax: 305-960-2201
 -and-
Howard Hoffman, Esq.
Jack Schriver, Esq.
Duane Morris
227 West Monroe Street
Chicago IL 60606
Tel: 312-499-6784/Fax: 312-499-6701
*Counsel for Dominick Parlapiano ("Parlapiano")*

Juan P. Bauta, II, Esq.
6915 Red Road
Suite 206
Coral Gables, FL 33143
*Counsel for Dominick Parlapiano ("Parlapiano")*

Luis I. Guerra, Esq.
3127 Ponce de Leon Boulevard
Coral Gables, Florida 33134-6816
*Counsel for Dominick Parlapiano ("Parlapiano")*
(serve by mail only)

Mitchell E. Herr, Esq.
Holland & Knight, LLP
701 Brickell Ave., Suite 3000
P.O. Box 015441
Miami, FL 33131
Tel: 305-789-7736 / Fax: 789-7799
*Counsel for non-party EFG Private Bank ("EFG")*

David C. Cimo, Esq.
Brett M. Amron, Esq.
Genovese, Joblove & Battista, P.A.
100 S.E. Second Street, 36th Floor
Miami, Florida  33131
Tel: 305-349-2300 / Fax: 305-349-2310
*Counsel for Court-Appointed Receiver ("Receiver")*

Lewis B. Freeman
2675 S. Bayshore Drive
Miami FL 33133
Tel: 305-443-6622 / Fax: 305-285-3441
*Court-Appointed Receiver ("Receiver")*

R. Thomas Farrar, Esq.
Four Seasons Tower, Suite 1014
1441 Brickell Avenue
Miami, Florida 33131
Tel: 305-372-8786 / Fax: 305-379-7018
*Counsel for non-party Garmendia ("Garmendia")*

Jane W. Moscowitz, Esq.
Moscowitz, Moscowitz & Magolnick, P.A.
1111 Brickell Avenue, Suite 2050
Miami, Florida 33131
Tel: 305-379-8300 / Fax: 305-379-4404
*Counsel for Defendants Bankest Capital Corp. ("Capital")*
  *Bankest International ("Bankest International")*
  *Bankest Finance LLC ("Bankest Finance")*

Alexander Angueira, Esq.
Stearns Weaver Miller
Weissler Alhadeff Sitterson
150 W. Flagler Street
#2200
Miami, FL 33130
Tel: 305-789-3200 / Fax: 305-789-3395
*Counsel for EFG Private Bank, S.A.*

Robert C. Maland, Esq.
Robert C. Maland, P.A.
One Datran Center, Suite 1710
Penthouse One
9100 S. Dadeland Boulevard
Miami, FL 33156
Tel: 305-670-4900
Fax: 305-670-6159
*Co-Counsel for Defendant Cantor*

Jack Blumenfeld, Esq.
Jack Blumenfeld, P.A.
Two Datran Center, Suite 1200
9130 S. Dadeland Boulevard
Miami, FL 33156
Tel: 305-670-3311
Fax: 305-670-7003
*Co-Counsel for Defendant Cantor*

Michel O. Weisz, Esq.
Segredo & Weisz
9530 S. Dixie Highway, Suite 1500
Miami, FL 33156
Tel: 305-670-3820
Fax: 305-670-3280
*Counsel for Defendant Puerto*

# Exhibit A



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)

CASE NO. 03-22112-CIV-HUCK/TURNOFF

BANK ESPIRITO SANTO
INTERNATIONAL, LTD., a Cayman
Islands corporation,

      Plaintiff,

vs.

E.S. BANKEST, LC, a Florida limited
liability corporation, et al.,

      Defendants.
_____/

**<u>OMNIBUS ORDER</u>**

THIS CAUSE came before the Court on October 17, 2003 at 10:00 a.m. on several motions and other pending matters. The Court, having heard the argument and representations of counsel, and being otherwise duly advised in the premises, does hereby

ORDER AND ADJUDGE as follows:

1.     Plaintiff's Cross Motion to Abate Scheduled Depositions until Plaintiff Receives Unfettered Access to Bankest Documents [DE #138] is granted.

2.     Defendant E.S. Bankest LC's Motion to Stay Merits Discovery and Permit Jurisdictional Discovery [DE # 144] is denied, except that based upon the agreed schedule and procedures announced on the record during the hearing (which are incorporated into this order by reference), the parties will engage in expedited discovery regarding the subject matter jurisdiction motion filed by E.S. Bankest LC and Dominick Parlapiano (the "Subject Matter Jurisdiction

Motions"). The hearing on the Subject Matter Jurisdiction Motions will be conducted on November 7, 2003 at 9:00 a.m. at 99 NE 4th Street, 10th Floor, Courtroom 6, Miami, Florida and on or before November 5, 2003 at 5:00 p.m. the parties shall file and serve on one another their respective memoranda of law and other submissions and evidence in regard to such motion.

      3.     That portion of the Emergency Motion to Approve Payment of Attorneys Fees for Defendant Entities [DE # unknown][1] (the "Fee Approval Motion") that sought approval of payment of attorneys fees and costs for Bankest Receivables USA LLC to defend itself in regard to Case No. 03-22283-CIV-HUCK/TURNOFF is denied. A ruling in regard to all other relief sought in the Fee Approval Motion is deferred pending the entry of a final order on the Subject Matter Jurisdiction Motion, as is a ruling in regard to all objections and oppositions filed in regard to such motion.

      4.     For the reasons stated on the record, Defendant E.S. Bankest LC's Emergency Motion for Protective Order to Prohibit Receiver from Responding Directly to Discovery Requests and From Otherwise Sharing Confidential Information with Plaintiff [DE # 136] is granted in part and denied in part. In response to more detailed requests submitted (or to be submitted) by the Plaintiff to the Receiver, through rolling production the Receiver shall make available for inspection and copying as soon as practicable all non-privileged, non-confidential documents responsive to such requests, with Defendant E.S. Bankest LC to be given the opportunity to review what is being offered to be produced to the Plaintiff prior to the documents being made available for inspection and copying to the Plaintiff. In regard the September 25, 2003 Joint Prosecution/Common Interest Agreement between the Receiver and the Plaintiff, the Receiver shall notify ES Bankest LC of all privileged or confidential documents that it intends to produce or otherwise have the Plaintiff review,

---

[1] For some unknown reason, this matter does not appear on the official court docket.

and of all other oral or written privileged or confidential communications the Receiver intends to

partake in with the Plaintiff in regard to the September 25, 2003 Joint Prosecution/Common Interest

Agreement so as to ensure that E.S. Bankest LC is given an adequate opportunity to object to the

documents or communications sought to be disclosed between the Receiver and the Plaintiff.

DONE AND ORDERED in Chambers in the Southern District of Florida this ___ day of

October, 2003.

Paul C. Huck, Judge
UNITED STATES DISTRICT COURT

Copies to: all counsel and parties of record

3

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-22112

BANK ESPIRITO SANTO,

      Plaintiff

vs.

E.S. BANKEST L.C.,

      Defendants

- - -

TELEPHONIC CONFERENCE

HELD 10-22-03

- - -

APPEARANCES:

FOR THE PLAINTIFF:

CHARLES H. LICHTMAN, ESQ.

and HENRY FOX, ESQ.

FOR THE DEFENDANT:

JEFFREY FELDMAN, ESQ.

COUNSEL FOR MR. PARLAPIANO

TINA SHLONICK, ESQ.

---

THE COURT: Good afternoon. Who do I have on the line, please.

MR. LICHTMAN: Henry Lichtman, Henry Fox, Berger Singerman for the plaintiff.

MR. FELDMAN: Jeffrey Feldman on behalf of E.S Bankest.

MS. SHLONICK: Tina Shlonick on behalf of Dominic Parlapiano.

MR. FELDMAN: There are no other parties on the line. They have all been notified and determined they did not need to be in on this phone conference.

THE COURT: All right. What is the issue here?

MR. LICHTMAN: The appointment of the special master.

THE COURT: I have spoken with Herb Stettin. He's willing to make himself available, so that's in place. I think what I said was I would talk to him and at the appropriate time I would enter an order and move from there when his services were needed, as long as he was pretty much on standby. I have accomplished that. I guess I can go ahead and enter an order.

MR. FELDMAN: This is Jeffrey Feldman. May I address the Court?

THE COURT: Yes.

MR. FELDMAN: We took the first so called jurisdictional deposition this morning, that was of Mr. Parlapiano. There is a gray area where -- I think everyone is acting in good faith here. There is a gray area between jurisdiction and merits.

---

A lot of the merits are wrapped up in the jurisdictional issue but there is still a line everyone is searching for. I spoke with Bucky before starting the deposition.

I think we both agreed we anticipated the ambiguity, anticipated it would become a problem in terms of understanding the boundaries. We both agreed if there was going to be a special master used in this case it would -- this would be an appropriate time because we're going to just run into dead-ends. What we feared in fact materialized in the Parlapiano deposition to some extent.

THE COURT: Mr. Feldman, when you said Bucky who were you referring to?

MR. FELDMAN: I apologize, Your Honor. I was referring to Mr. Fox.

THE COURT: I would prefer that you all to refer to each other by your last names so I know who you are talking about and the record is clear.

MR. FELDMAN: I apologize, Your Honor.

THE COURT: All right. You may proceed.

MR. FELDMAN: Yes, sir. Your Honor, given the short period between the depositions and the actual hearing we believe we would get a lot more done if you would direct the special master to attend the two days of deposition so we would have someone to mediate the boundaries on merits and jurisdiction.

MR. LICHTMAN: This is Mr. Lichtman speaking. I am going to defer in part to Mr. Fox. But it strikes me that -- I think we're

---

fortunate enough to have Mr. Stettin available, who I believe if we picked up the phone then and there at a time where his participation was necessary it would be appropriate. I don't think given Mr. Stettin's busy schedule we have any realistic opportunity of having him drop what he is doing.

He may be acting as a sitting judge, which he does from time to time. So to have him sit in on depositions like this I don't this is feasible.

I think someone ought to confirm that with him before the Court says Mr. Stettin should sit in on these depositions. While we think it's appropriate we have the special master, and the Court will note I am the one that has recommended it and there's a likelihood my client will be paying for it, I do not volunteer to pay for having Mr. Stettin sit in on two days worth of depositions.

THE COURT: Anyone else that wants to weigh in on this issue?

MR. FOX: If I might, Your Honor, Henry Fox. I think if it could be arranged a more appropriate arrangement would be to have Mr. Stettin available to review and rule on issues as they come to the forefront.

I suspect a large portion of this is not going to be objectionable and will not be argued over. I think that rather than have -- trying to interrupt Judge Stettin's calendar for two days if he can make himself available by telephone that would be appropriate.

5

THE COURT:  Here's my view on this. As I said, I talked to
Judge Stettin. As a matter of fact, I spoke with him this morning
and he agreed to undertake this responsibility.

One of the first things he asked was who the parties were
so he did not have a conflict, and wanted to know what he was
getting into. As I read the names of the lawyers to him he
expressed his pleasure in knowing the names of the lawyers and
commented they're all very fine lawyers and was looking forward to
working with them and thought it should not be much of a problem
because the lawyers are such fine lawyers.

He said he would make himself available.  I discussed this
particular issue with him.  Having heard the arguments here today it
appears to me you are making too much of this.  I don't see that
it's necessary to appoint a special master to sit in on these
depositions.

I don't think it's even necessary to have a special master
on stand-by. I will tell you why.  There is probably a gray area
between jurisdictional and merits issues and evidence, but I don't
see why we can't gloss over the gray area, ask the question, get an
answer and move on to the next question.

If it turns out that it is more merits than jurisdictional
it seems to me it is no harm no foul. Eventually merits depositions
will be completed, whether in this court or State Court. Again, I
don't see there's any harm in allowing those areas to be gone into.
You all wanted to put the jurisdictional issue on a fast track and

---

6

that's why I set these depositions up the way I did. It was not
meant to preclude merits discovery.

MR. FELDMAN:  Makes sense.  It saves everyone time and
money and it will ultimately eliminate the genesis of the problem we
were anticipating.

THE COURT:  If you spend all the time on merits and don't
do any jurisdiction then you will not get accomplished what everyone
is setting out to accomplish.

I think that as Judge Stettin observed, you are all very
good lawyers, you ought to be able to go through a deposition
without much of a problem.

If it strays into a gray area from time to time or into a
black or white area from time to time it seems to me that's not the
worst thing that could happen in this case.

That potential problem, I use the word problem loosely
because I don't think it will be a problem, I think is -- does not
justify having someone on standby to try to make judgment calls in a
so called gray area, especially when Judge Stettin will know very
little about this case.

I am not certain what he could lend to that process.
Having discussed it with me he agrees with me a hundred percent. If
I can help you in the next couple minutes with some particular
problem or some category of problem I'll be glad to weigh in on
that.

MR. FOX:  I think the issue is going to come with regard to

---

7

the somewhat intermixed role of Victor Balestra who is the president
of Florida bank and also is the local representative of the
plaintiff International -- Bank Espirito Santo International.

I think that confusion comes because of the relationship
between the various parties, a lot of which involve the role of Mr.
Balestra as the representative of the Florida bank in connection
with his membership, with their membership as the part owner of E.S.
Bankest L.C.

There are different banking relationships that exist
between E.S. Bankest L.C. Bankest Capital and the other entities, as
well as the Orlanskys and the Florida Bank as a bank which are
different than Mr. Balestra's role with regard to assisting and
acting as the local representative of the collateral agent,
plaintiff Bank Espirito Santo International.

I think those are the areas where there is some confusion.
There certainly is no problem with Mr. Balestra testifying as to his
knowledge in connection with matters.

Given the allegation there is a complete intermixing of the
Espirito Santo entities it is very important his testimony be
differentiated as to in what capacity he has learned or has
knowledge of a particular matter on which he is testifying or that
he is testifying as to his actions in a particular capacity.

THE COURT:  I guarantee you that as good as Herb Stettin is
he will not be able to stand by and everyone once and a while get a
phone call and try to interpret anything that would assist the

---

8

taking of the depositions. I think we're going to have to rely on
good lawyers exercising common sense and being fair minded in taking
these depositions. I don't see where this so called gray area
creates the kind of problem you suggest it might.

MR. FELDMAN:  Jeffrey Feldman, Your Honor. What I am coming
away with, given the specific example Mr. Fox was just giving where
you have a witness that may have worn two hats, from what you are
ordering, regardless of the hat that he has worn, if he has
knowledge he is to answer and there is no dividing line --

THE COURT:  How do you divide someone's knowledge?

MR. FELDMAN:  I don't know.

THE COURT:  AND how could Judge Stettin possibly assist in
that regard?

MR. FELDMAN:  To the extent you are saying answer the
questions -- we discussed this issue, as you said, the other day
about their being no stay on merit discovery.

What I am coming away with is you are ordering that the
deposition is not limited to this jurisdictional issue, although you
are encouraging the parties to keep it narrow.

THE COURT:  It is a jurisdictional deposition but I don't
know that you can draw a bright line between jurisdictional issues
and merit issues. I think it would be a folly to attempt to draw a
bright line in that regard.

Eventually we're going to get to the merits discovery in
any event, whether here or in State Court. In my view no one is

9

prejudiced in any way by this. It means you will have to be careful
and not go -- the main thing is to act in good faith, that you are
not attempting to go into the merits discovery per se, but I can't
conceive of any way you can avoid getting into some of the merits of
the case.

    With regard to Mr. Balestra and his wearing more than one
hat, I think you will have to be careful about asking the question
in what capacity, and if he has some knowledge if there is some
question the defending attorney can ask for a clarification.

    MR. FELDMAN:  One issue that came up this morning, Judge,
was the role that Mr. Balestra would be appearing for deposition in.
We set, and you previously ordered, Mr. Balestra to appear
individually --

    MR. LICHTMAN:  That is not accurate.

    MR. FELDMAN:  Excuse me, Mr. Lichtman.  If Your Honor would
look at the order dealing with this indeed you state that Victor
Balestra would appear individually, and then we got into a
discussion with Miss Herod from Mr. Lichtman's firm about appointing
him as a 30B6 witness, informed he would be there as a 30B6
representative.

    And we were informed by Mr. Fox this morning that they are
not allowing Mr. Balestra to appear in an individual capacity and
would only answer questions on the jurisdictional deposition as a
30B6 witness and then only on the areas designated, which was
contrary to what happened in court on Friday and what the Court

10

previously ordered in September and what the parties had agreed to.
Again, to eliminate a lot of motion practice I would ask the Court
to assist us in clarifying whether we may depose Mr. Balestra
individually, which was our original intent.

    And to the extent they can accommodate the 30B6 as
designating him as their representative, we can do that as well.
Notwithstanding what went on, on Friday they're trying to limit the
scope of the inquiry they're willing to allow us to make with
respect to the jurisdictional issue.

    The bottomline is I think what they're trying to do is to
limit Mr. Balestra to answering questions only to the extent he has
knowledge from his role as the local representative of the plaintiff
International. To the extent that Balestra has individual knowledge
as a result of the other hats he wears is that off limits?  I would
ask Your Honor to assist us in clarifying that if you could, Judge.

    MR. LICHTMAN:  If I may respond, when we came up with the
proposal, after I was in the back of the courtroom consulting with
my client and we stepped forward and offered him up I think you
specifically asked the question about his appearance and at that
point in time in the conversation is where it was specifically
stated, to the best of my recollection, that we were offering him up
as a 30B6 witness.

    THE COURT:  That may be what happened but it certainly was
not my intent to limit the defendants to only taking a corporate
representative deposition. It may be you all spoke in terms of a

11

representative capacity but that is because that's the context we
were talking in. Let me just clarify that, I am not limiting the
defendants to just a 30B6 representative.  If they want to take Mr.
Balestra's deposition -- if they want to do it twice that's fine, if
you want to do it all at one time that's fine.  But that was
certainly not my intent.

    MR. FOX:  May I then request if Mr. Feldman intends to make
inquiry as to Mr. Balestra's actions and activities in his hat as
president or officer of the Espirito Santo Florida Bank that an
appropriate subpoena be served.

    There are certain regulatory and privacy issues with regard
to Mr. Balestra giving that testimony without giving notice to the
others involved. If it is pursuant to a valid subpoena there's not
a problem. I don't want to put him or the bank in a jam with regard
to that.

    THE COURT:  I don't know what the regulatory requirements
are. I think that would be something you could get done this
afternoon.

    MR.FELDMAN:  We'll issue a subpoena, not withstanding the
fact this was done by agreement, we will subpoena Mr. Balestra
individually for him to appear to give his deposition, understanding
he is also designated as a 30B6 witness.

    THE COURT:  If there comes a point he needs to distinguish
between his representative capacity and his individual capacity put
that on the record. I assume counsel will accept service for Mr.

12

Balestra.

    MR. FOX:  We will be happy to do that.

    THE COURT:  All right. Anything else I can help you all
with since I have you here on the phone?

    MR. FELDMAN:  The only other issue, Mr. Fox and I discussed
it earlier, we did take Mr. Parlapiano's deposition.  His counsel is
on the phone. As anticipate he took the Fifth to everything really
other than his name, his address and an affirmation that the
affidavit was true and correct.

    Again, given the importance of his affidavit to this
inquiry and the short time schedule I was going to ask the Court to
set a briefing schedule on the issue of the waiver so we can resolve
it and allow Mr. Parlapiano to be set for deposition --

    THE COURT:  That's the kind of thing that can be resolved
by Judge Stettin. We need to get him in on this process.  That's a
discrete issue he can deal with.

    I would suggest you all after I hang up stay on the line
and discuss a scheduling order on that, something fairly short and
then submit it for Judge Stettin's consideration. Can you agree on
a quick schedule on that?

    MR. FELDMAN:  We need to find out who's moving. Mr. Fox,
are you planning on moving?

    THE COURT:  I don't want to weigh in on that. I'll let you
all work that out.  If you need to file a motion file a motion. In
that motion submit a proposed schedule.

13

If you can agree on a schedule so much the better. If you can't then have one side propose it and if you know the other side's schedule say here's what the other side offers and then we'll submit that -- by that time I'll have the order entered with regard to a special master.

MR. FELDMAN:  We would file the original with the Court but direct a copy to Judge Stettin?

THE COURT:  I think that makes sense. You ought to find out what his schedule is.  The order will be entered this afternoon with regard to the special master.

MR. FELDMAN:  Will you enter a written order with respect to the conversation or do we leave it as we have it here?

THE COURT:  There's no motion before me. There's nothing to enter an order on.

MR. FELDMAN:  Okay.

THE COURT:  I am simply making some observations at this point. All right.  If there's nothing else we'll be in recess on this matter.

HEARING CONCLUDED

14

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.

_____                 _____
DATE FILED                      PATRICIA SANDERS, RPR

13

If you can agree on a schedule so much the better. If you can't then have one side propose it and if you know the other side's schedule say here's what the other side offers and then we'll submit that -- by that time I'll have the order entered with regard to a special master.

MR. FELDMAN:  We would file the original with the Court but direct a copy to Judge Stettin?

THE COURT:  I think that makes sense. You ought to find out what his schedule is.  The order will be entered this afternoon with regard to the special master.

MR. FELDMAN:  Will you enter a written order with respect to the conversation or do we leave it as we have it here?

THE COURT:  There's no motion before me. There's nothing to enter an order on.

MR. FELDMAN:  Okay.

THE COURT:  I am simply making some observations at this point. All right.  If there's nothing else we'll be in recess on this matter.

HEARING CONCLUDED

14

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.

10-24-03

DATE FILED                      PATRICIA SANDERS, RPR

Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 03-22112-CIV-HUCK/TURNOFF



FILED by _____ D.C.

DEC 2 9 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

BANK ESPIRITO SANTO
INTERNATIONAL, LTD., a Cayman
Islands corporation,

          Plaintiff,

vs.

E.S. BANKEST L.C., a Florida limited
liability corporation, *et al.*,

          Defendants.

_____/

## ORDER DENYING MOTIONS TO DISMISS

THIS CAUSE came before the Court for oral argument on December 19, 2003 on Defendants' motions to dismiss for lack of subject matter jurisdiction [DE#122, 143, 162]. Upon considering the motions, the parties' legal memoranda, and counsels' argument, it is

ORDERED AND ADJUDGED that the motions are DENIED based on the findings of fact and conclusions of law stated on the record at the conclusion of oral argument.

DONE in Chambers, Miami, Florida, this 23rd day of December, 2003.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record

# Exhibit C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 03-22112-CIV-HUCK/TURNOFF

BANK ESPIRITO SANTO
INTERNATIONAL, LTD., a Cayman
Islands corporation,

            Plaintiff,

vs.

E.S. BANKEST L.C., a Florida limited
liability corporation, *et al.*,

            Defendants.

_____/

## ORDER REGARDING MOTIONS TO DISMISS

THIS CAUSE is before the Court on the Defendants', Bankest Capital Corp., Bankest International, Inc., Bankest Receivables, USA, LLC, and Bankest Finance, LLC (collectively, the "Bankest entities"), Eduardo Orlansky and Hector Orlansky, Motions to Dismiss [DE ## 110,113] this action by Banco Espirito Santo International, LTD ("BESIL") as Collateral Agent for lenders, Banco Espirito Santo, S.A., Nassau Branch and C.S.B. Finance, Ltd. (collectively, the "Lenders"), under the Restructuring Agreement, whereby E.S. Bankest, L.C. ("ESB") is the borrower. In their Motions, Defendants contend that BESIL may not bring this action in Florida because (1) BESIL is not registered to conduct business in Florida, as required by §§607.1502(1) and 607.1502(2) (Florida's so-called "door closing" statute), Florida Statutes, and (2) Counts III, for fraud, V, for constructive trust and VI, for fraudulent transfer do not state causes of action. The Court has considered the Motion and the parties' legal memoranda and is fully advised on the matter. For the reasons stated below, the Motion is DENIED IN PART and GRANTED IN PART.

### Florida Door-Closing Statute

With regard to Defendants' first point, BESIL is a foreign corporation, incorporated in the Cayman Islands. Defendants contend that BESIL is required to register to do business in Florida

1

under Florida Statute §607.1502(1), and that because BESIL has not done so, it is barred by Florida Statute §607.1502(2) from bringing an action in a Florida court.  BESIL responds that it is not required to register to do business in Florida, and the fact that it has not so registered does not prohibit this action because it does not conduct business in Florida.

The Court agrees with BESIL.  This is because BESIL's activities do not constitute the conducting of a business in Florida.  Section 607.1502(2) lists activities which are deemed not to be conducting business in Florida.  Subsection (h) provides:

> (2) The following activities, among others, do not constitute transacting business. ..
> (h) Securing or collecting debts or enforcing mortgages and security interests in property securing debts. . ."

BESIL's Florida activities fall within subsection (h) as it has only sought to collect debts and enforce security interest rights associated with those debts.  Thus, BESIL is not conducting business in Florida as that term is defined by §607.1502, and, accordingly, BESIL may bring this action without registering to do business in Florida.

### Fraud Count

BESIL's Count III alleges fraud against Eduardo Orlansky, Hector Orlansky, Dominick Parlapiano (collectively, the "Principals"), E.S.B., and Bankest Capital Corp. based on certain misrepresentations made to BESIL regarding the Restructuring Agreement.  Defendants contend that the fraud claim is not plead with requisite specificity.

Fed. R. Civ. P. 9(b) requires "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Such a rule exists to "aler[t] defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2002).  Accordingly, to properly plead fraud, a plaintiff must set forth

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and

> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

> (3) the content of such statements and the manner in which they misled the plaintiff.

2

*Id.* In contrast, mere conclusory allegations of fraud do not comply with Rule 9(b).  *Cooper v. Blue cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 568-9 (11th Cir. 1994).

In summary, a plaintiff must allege that "who, what, where and to whom" regarding the fraudulent misrepresentations.  BESIL has failed to do so in Count III.  BESIL fails to provide sufficient details such that Defendants are fairly put on notice. Moreover, BESIL alleges that

> Each of the Principals, ESB and Capital and other that Agent has yet to discover, acting in concert with each other, made written and verbal representations of material facts to Plaintiff, including but not limited to, the amount of collectible accounts receivable due and owing to ESB, all with knowledge of their falsity.

The use of the terms "including but not limited to" is improperly vague if BESIL intends to rely on other unspecified misrepresentations.  While BESIL does allege that Defendants submitted false accounts receivables and financial condition reports to induce BESIL to enter into the Restructuring Agreement, in support of that allegation BESIL merely gives

> Examples of misrepresentations in the accounts receivables include, but are not limited to, in excess of $50 million ESB claimed was due and owing from Joy Athletic, Inc., when in fact, only $5 million was due and owing.

BESIL also provides two other examples involving loans to Stratasys and an investment in ENA, Inc. If BESIL intends to rely on other instances or examples of misrepresentation, it must specify those so that Defendants are put on notice.  If BESIL does not intend to rely on other instances or examples, it should so state and delete allegations such as "including but not limited to" and "examples. . .but are not limited to."

Count III does not plead fraud with the specificity required by Rule 9(b).  Accordingly, Count III is dismissed with leave to amend within twenty days of this order.

## Constructive Trust

BESIL's Count V adequately states a claim for the imposition of a constructive trust over the assets of Principals, Bankest Capital Corp., Bankest Receivables USA, LLC, Bankest International, Inc. and Bankest Finance, LLC to the extent that each may have improperly received part of the Amended Collateral which is secured by the terms of the Restructuring Agreement.  However, each Defendant is entitled to know what BESIL alleges each Defendant improperly received and under what circumstances. Accordingly, the Motion to Dismiss is DENIED as to Count V and BESIL shall,

within twenty days of the date of this Order, file a statement setting forth the amount of Amended Collateral each Defendant improperly received and the manner by which it was received.

### Fraudulent Transfer

In Count VI, BESIL attempts to allege a claim or several claims based on fraudulent transfers pursuant to Florida Statute §726.105. While the Court agrees with BESIL that such fraudulent transfers do not require allegations of actual fraud, as Defendants contend, Count VI is so vague and confusing that the Court is unable to fairly ascertain the nature of the challenged transfers, including by whom and to whom each transfer was made, and the amount of each transfer, and how it was in violation of Florida Statute §726.105. Accordingly, Count VI is DISMISSED with leave to amend within twenty days of this Order.

### Conclusion

The Defendants' Motions to Dismiss are DENIED as to Counts V, on the condition that BESIL file the statement described above within twenty days of this order, and are GRANTED as to Counts III and VI. BESIL may amend its complaint within twenty days of this Order.

The oral argument scheduled for December 30, 2003 at 1:30 p.m. is CANCELLED.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record

4